UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
2939, LLC, DAVID WEISS, LINDA WEISS,
INDUSTRIA SUPERSTUDIO OVERSEAS, INC.
INDUSTRIA WORLD LLC., INDUSTRIA
@ SEA, INC., BORGO GUGLIELMO, LLC.
and MASSACHUSETTS BAY INSURANCE
COMPANY,

                           Plaintiffs,

    -against-

CONTINENTAL INDEMNITY COMPANY,

                           Defendant.
-------------------------------------------------------------------x

Case No.1:21-cv-00729-RPK-RML

**FIRST AMENDED COMPLAINT**

        Plaintiffs, 2939, LLC, DAVID WEISS, LINDA WEISS, INDUSTRIA SUPERSTUDIO OVERSEAS, INC. INDUSTRIA WORLD LLC., INDUSTRIA @ SEA, INC., BORGO GUGLIELMO, LLC. and MASSACHUSETTS BAY INSURANCE COMPANY, by and through their attorneys, STRIKOWSKY DRACHMAN & SHAPIRO PLLC, as and for their First Amended Complaint to obtain a judgment declaring the rights and legal relations of the parties to this action, state as follows:

        1.     Plaintiffs seek, *inter alia*, an order pursuant to 28 U.S.C. § 2201, declaring that defendant Continental Indemnity Company (hereinafter "Continental") is obligated to satisfy a judgment entered against Continental's named insured Bulson Management, LLC, (hereinafter "Bulson") in an action captioned Wang, et al. v. Industria Superstudio, et al., Index No. 519101/2016 (Supreme Court, Kings County) (hereinafter the "Wang Litigation").

        2.     Plaintiffs may maintain a direct action against Continental, Bulson's insurer, pursuant to New York Insurance Law § 3420(b).

3. New York Insurance Law § 3420(b) permits a successful tort claimant to bring a direct action against a tortfeasor's insurer where, as here: (a) a demand is made of the tortfeasor's insurer to satisfy a judgment entered against the tortfeasor; and (b) the insurer fails to satisfy the judgment within 30 days of the demand.

4. Plaintiffs made a written demand that Continental satisfy the judgment entered against Bulson in the Wang Litigation, such demand was made more than 30 days ago, and the judgment remains unsatisfied.

5. As such, Plaintiffs have standing to maintain the instant action.

## THE PARTIES

6. At all times mentioned herein, plaintiff 2939, LLC. (hereinafter "2939") was and still is a domestic limited liability company duly organized and existing under the laws of the State of New York, with a principal place of business in the County of Kings, State of New York.

7. At all times hereinafter mentioned, plaintiff David Weiss, was and still is a resident of the County of Kings, State of New York.

8. At all times hereinafter mentioned, plaintiff Linda Weiss, was and still is a resident of the County of Kings, State of New York.

9. At all times mentioned herein, plaintiff Industria Superstudio Overseas, Inc. (hereinafter "Industria Superstudio"), was and still is a domestic business corporation duly organized and existing under the laws of the State of New York, with a principal place of business in the County and State of New York.

10. At all times mentioned herein, plaintiff Industria World LLC., (hereinafter "Industria World") was and still is a domestic limited liability company duly organized and existing under the

laws of the State of New York with a principal place of business in the County and State of New York.

11. At all times mentioned herein, plaintiff Industria @ Sea, Inc. (hereinafter "Industria @ Sea, Inc.") was and still is a domestic corporation duly organized and existing under the laws of the State of New York with a principal place of business in the County and State of New York.

12. At all times mentioned herein, the plaintiff Borgo Guglielmo, LLC (hereinafter "Borgo Guglielmo") was and still is a domestic limited liability company duly organized and existing under the laws of the State of New York with a principal place of business in the County of New York, State of New York (all of the aforementioned plaintiffs are hereinafter referenced collectively as the "Industria Parties.")

13. At all times mentioned herein, the plaintiff, Massachusetts Bay Insurance Company (hereinafter "Massachusetts Bay") was and still is a foreign corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, duly authorized to engage in the business of insurance in the State of New York.

14. Upon information and belief, at all times mentioned herein, defendant Continental was and is an insurance company existing under the laws of the State of Iowa with a principal place of business in the State of Nebraska and authorized to engage in the business of insurance in the State of New York.

**THE WANG LITIGATION**

15. This declaratory judgment action stems from an incident in which Ri Xian Wang ("Wang") fell from a ladder while performing construction work for his employer, non-party Bulson, leading to tort litigation whereby Wang sought damages for the injuries he sustained as a result of the accident, including permanent paralysis.

16. The litigation commenced by Wang and his wife, Mei Ying Lin, named the Industria Parties as defendants and included allegations that the Industria Parties were statutorily and/or vicariously liable for injuries sustained by Wang in the scope and course of his employment with Bulson.

17. Thereafter, the Industria Parties filed a third-party complaint seeking contribution and indemnification from Bulson.

18. A judgment of $21,000,000 was entered in favor of the plaintiffs in the Wang Litigation against the Industria Parties.

19. The Industria Parties, in turn, were awarded judgment on their claims against Bulson in the amount of $21,000,000—the full amount of the judgment awarded in the Wang Litigation.

20. A total of $5,000,000 of the judgment of indemnity has been paid to the plaintiffs in the Wang Litigation by Bulson's general liability and excess insurers, on behalf of the Industria Parties.

21. The remaining $16,000,000 of the judgment in the third-party action against Bulson remains unpaid.

22. Because Wang was injured in the course and scope of his employment with Bulson and because he suffered a grave injury within the meaning of New York State Workers' Compensation Law § 11, the policy issued to Bulson by Continental, as described below, must respond with coverage.

## THE CONTINENTAL POLICY

23. At the time of the accident, Continental insured Bulson under a "New York Workers' Compensation and Employers Liability Policy" bearing policy number 46-227428-01-02 with a policy period of May 7, 2016-May 7, 2017 (the "Policy" or the "Continental Policy").

24. The Policy provided unlimited Workers' Compensation ("WC") and Employers' Liability ("EL") coverage on a statutorily-approved form provided by the New York Compensation Insurance Ratings Bureau ("NYCIRB"), of which Continental is a member.

## PROCCEDINGS BEFORE THE WORKERS' COMPENSATION BOARD

25. The issue of who employed Mr. Wang at the time of the accident was the subject of a disputed claim before the New York State Workers' Compensation Board ("WCB").

26. The WCB proceeding resulted in a determination that Bulson was Wang's employer.

27. Insurance carriers seeking to controvert coverage must raise all defenses to coverage in any proceeding before the WCB, and any defenses not so raised are deemed waived. *See, e.g.*, 12 NYCRR § 300.38, *et seq*.

28. Continental proceeded to appeal the WCB's determination as to the amount of the weekly award, however, it did not raise any claims of fraud or material misrepresentation in connection with its obligation to pay workers' compensation benefits to Wang.

29. Continental's failure to assert issues of fraud or misrepresentation during the WCB proceeding constitutes a waiver of Continental's right to assert those grounds to contest coverage for the claims arising out of the Wang Litigation.

## CONTINENTAL SEEKS TO EVADE ITS COVERAGE OBLIGATIONS BY FILING A DECLARATORY JUDGMENT ACTION AGAINST BULSON

30. Nevertheless, on or about May 4, 2020—over two years after the workers' compensation proceeding had been litigated and resolved—Continental filed a complaint in the United States District Court for the Southern District of New York against Bulson and Wang, Continental Indemnity Company, LLC v. Bulson Management, LLC and Ri Xian Wang, Case No. 1:20-cv-03479 (S.D.N.Y.) (the "Continental Action").

31. Continental, aware of the magnitude of Wang's injuries and the regulating exposure to its limits, initiated the litigation to attempt to escape the obligation undertaken in its insurance policy to satisfy any judgment against Bulson in the Wang Litigation.

32. In the Continental Action, Continental sought, *inter alia*, a declaration that the Continental Policy did not provide employer's liability coverage for the claims asserted against Bulson in the Third-Party Complaint in the Wang Litigation.

33. It asserted causes of action for fraudulent inducement, breach of contract, and unjust enrichment in which it demanded that Bulson return over $1,000,000 for WC benefits that Continental paid to Wang as directed by the WCB proceeding previously litigated.

34. In its Amended Complaint, Continental acknowledged that, prior to filing suit, it had not denied coverage to Bulson for the Wang Litigation.

35. Rather, Continental alleged that at the time suit was filed, it was defending Bulson against the allegations raised in the Wang Litigation, subject to a reservation of rights.

36. New York Insurance Law § 3420(d)(2) provides that where an insurer such as Continental disclaims coverage on the basis of a policy exclusion or policy condition, that it must

disclaim coverage "as soon as reasonably possible" upon learning of the basis for disclaimer, and, further, that the disclaimer be sent to all interested claimants.

37. Bulson and the Industria Parties were interested claimants to whom Continental was obligated to issue a timely disclaimer, as per New York Insurance Law § 3420(d)(2).

38. Continental claimed it was relieved of any duty to provide the bargained-for insurance coverage because Bulson had fraudulently concealed that Wang was its employee, relying on the fact that (a) the WCB had determined that Bulson was Wang's employer, and, (b) Bulson had not identified Wang as an employee in its payroll submissions to Continental.

39. However, Continental did not seek rescission of the Policy because workers' compensation and employer's liability policies cannot be voided *ab initio*; such policies can be cancelled only prospectively.

40. In fact, the exclusive remedy available to an insurer for circumstances where an employer fails to disclose an "off-the-books" worker is set forth in Section 52 of the New York Worker's Compensation Law.

41. New York law does not permit an insurer to deny claims on the ground that an employee had not been disclosed to the insurer.

42. Continental had actual knowledge of the requirements of New York law, including from a history of prior litigation before the WCB and in plenary proceedings whereby efforts to evade coverage obligations on similar grounds had been rejected.

43. Nevertheless, Continental alleged that no coverage was owed for the Wang Litigation because of Bulson's failure to comply with a purported policy condition.

44. Specifically, Continental claims that "accurate payroll reporting is a material condition to insurance coverage under the Continental Policy" and "[t]he terms of the Continental

7

Policy confirm that complete and accurate payroll reporting is a material condition of continuing insurance coverage," and that Bulson breached these conditions.

45. However, an examination of the Continental Policy's conditions section reveals that no such condition exists (and, further, an examination of the Continental Policy reveals no exclusion that bars coverage for an off-the-books employee not disclosed to the insurer).

46. Part Six of the Continental Policy sets forth five conditions, none of which remotely apply to payroll reporting: A) Inspection (which relates to the inspection of an insured's workplace); B) Long Term Policy (which addresses terms and conditions of policies with terms of longer than a year and sixteen days); C) Transfer of Your Rights and Duties (providing that rights or duties under policy cannot be assigned to a third party without Continental's consent); D) Cancellation (provides timeframes for prospective cancellation of the policy by the insured or Continental); E) Sole Representative (stating that the party identified in the policy declarations—i.e., Bulson—shall be the sole representative to act on behalf of all insureds under the policy).

47. In its Amended Complaint, Continental claims that Part 5 of the Continental Policy—which addresses calculation and payment of premium rather than policy conditions—allows the insurer to audit an insured's books and records, operates to require denial of a claim where there has been a failure to accurately disclose an off-the-books employee.

48. The Audit provision speaks only to the right of an insurer to conduct an audit, providing as follows:

> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate

8

service organizations have the same rights we have under this provision.

49. The above-quoted provision merely speaks to an insurer's right to conduct an audit; apart from recalculation of the appropriate premium to account for the additional employee, it does not address penalties for the failure to disclose an off-the books employee.

50. The language Continental relies upon does not support denial of claims and the insurer relies on ambiguous terms.

51. The "condition" Bulson allegedly violated was not a condition at all, as if it were, it would have been located in Part 6 of the Continental Policy—i.e., the conditions section.

52. Further, there is no language in Part 5's Audit provision supporting Continental's argument that a failure to disclose an off-the-books employee during such audits must result in denial of claim or action that may deprive an innocent third-party of recourse to the coverages extended by the policy.

53. Further, it is well-settled that a workers' compensation and employer's liability insurer's remedy for an insured's failure to submit to a premium audit is prospective cancellation of a policy, rather than retroactive cancellation or denial of claim.

54. Even assuming *arguendo* that the Continental Policy contained a condition addressing a failure to disclose an off-the-books employee - and it does not - Continental has waived the right to rely on such a condition.

55. In its Amended Complaint. Continental alleged that Wang was adjudged to be a Bulson employee by a decision issued by the New York State Workers' Compensation Board, dated November 14, 2017.

56. Thus, it was on November 14, 2017 - at the latest - that Continental became aware of the purported basis for disclaimer.

57. Indeed, Continental could have (and presumably did) reviewed the list of employees provided to the insurer in conjunction with the initial claim for benefits that prompted the WCB proceeding and the ultimate determination of employment.

58. However, Continental did not seek to disclaim coverage until May 4, 2020, when it filed the Continental Action - nearly 2 ½ years after the WCB's determination that Wang was a Bulson employee.

59. A delay of no less than 30 months in disclaiming coverage is unreasonable as a matter of law.

60. Thus, to the extent the Continental Policy is construed to have a condition concerning payroll reporting, Continental has waived the right to rely on that condition as per New York Insurance Law § 3420(d)(2) as the assertion of the defense was untimely and otherwise not in conformance with the statutory requirements, including the required notification to interested claimants.

### A DEFAULT JUDGMENT IS ENTERED AGAINST BULSON

61. Bulson did not appear in the Continental Action and, accordingly, Continental moved for a default judgment.

62. The Court granted Continental's default application, holding that Continental could deny defense and indemnity to Bulson in the Wang Litigation.

63. In so holding, the Court acknowledged precedent stating that the WCB's position is that policies can be canceled only prospectively.

64. However, the court erroneously found that such authority applied only to the worker's compensation portion of the Policy, not the employer's liability portion.

65. In so holding, the court relied on *dicta* from cases cited by Continental, which stated that coverage under the workers' compensation and employer's liability policies can be evaluated separately.

66. These decisions, however, did not address denial of claims or retroactive policy cancellation based on an insured's failure to disclose an off-the-books worker.

67. In relying on the decisions cited by Continental, the court overlooked (because it was, in fact, not presented with) binding New York State Court of Appeals precedent holding that Section 54 of the New York State Workers' Compensation Law, which prohibits retroactive policy cancellation and denial of benefits, applies to both the workers' compensation and employer's liability section of the policies.

68. In support of its application for a default judgment, Continental did not cite any appellate authority holding that workers' compensation or employer's liability claims could be denied, or the policy retroactively cancelled or voided, based on the employer's failure to disclose an off-the-books worker, nor that the rights of innocent third parties can be impaired retroactively.

69. The exclusive remedy for an employer's failure to disclose an off-the-books worker is set forth in New York State Workers' Compensation Law § 52.

70. As such, the court erred when it granted judgment on default in the Continental Action.

**CONTINENTAL'S DEFAULT APPLICATION WAS SUPPORTED BY THE DECLARATION OF JEFFREY A. SILVER, WHICH CONTAINED MATERIAL OMISSIONS AND MISREPRESENTATIONS**

71. Despite its actual knowledge of the restriction on retroactive denials, cancellation or voiding of policies based on an employer's failure to disclose an off-the-books employee, Continental asserted the right to evade its obligations.

11

72. The default judgment in the Continental Action was improperly obtained because the proofs annexed to Continental's default motion contained material misrepresentations and omissions.

73. Continental's default application was supported by the Declaration of Jeffrey A. Silver, dated August 10, 2020.

74. As set forth below, Mr. Silver's declaration contains material misrepresentations and omissions.

75. Mr. Silver, an attorney who holds no underwriting designations, annexed to his declaration a copy of the Continental Policy and a set of underwriting guidelines.

76. These guidelines, however, were not Continental's underwriting guidelines, but rather were from an entity called Applied Underwriters.

77. Mr. Silver represented to the Court that "[i]f Wang had been disclosed to Continental prior to issuance of the Policy, Continental would have charged Bulson $3,836.22 in additional premium."

78. Mr. Silver further averred that, "[a]s set forth in the Continental Policy, the premium due from Bulson thereunder was to be calculated based on the payroll information provide by Bulson and the statutorily-approved insurance rates applicable to the classes of workers Bulson employed."

79. Upon information and belief, these statements are misrepresentations that were designed to mislead the court.

80. An examination of the underwriting guidelines annexed to Mr. Silver's declaration reveals that they are the underwriting standards for, *inter alia*, insurance programs called SolutionOne and EquityComp.

81. Upon information and belief, the Continental Policy belonged to one of these two programs - programs whose sale has been banned in New York (as well as a number of other states).

82. As part of a Consent Order, the New York State Department of Financial Services ("DFS") fined Continental and its sister companies $3,000,000 and banned the future sale and marketing of the SolutionOne and EquityComp products in New York State.

83. The DFS alleged that Continental sold workers' compensation and employer's liability policies to New York insureds that impermissibly utilized side agreements that were not filed with or approved by the DFS, called Reinsurance Participation Agreements (RPAs").

84. The RPAs were entered into between New York insureds and Continental affiliate Applied Underwriters Captive Risk Assurance Company ("AUCRA").

85. The RPAs were not provided to New York State's insurance regulators in conjunction with required approvals of rates and forms and the supervision of authorized insurers.

86. It was these RPAs that actually governed the true premium paid by Continental's insureds, not the amount listed on the policy declarations.

87. The Consent Order further noted that "[w]hile some New York employers paid less for coverage under the Program than they would have paid under the [WC] policies alone, some New York employers paid more for coverage under the Program than they would have paid under the [WC] policies alone, many significantly more."

88. Premiums would fluctuate based om, *inter alia*, the number of claims filed by the insured's employees during the policy period.

89. By having Bulson execute an RPA, Continental contravened the terms of Continental Policy, which provides that "[t]he only agreements relating to this insurance are stated

13

in this policy. Ther terms of this policy may not be changed or waived except by endorsement issued by [Continental] to be part of the policy."

90. The RPAs also varied the policy from the requirements of NY DFS regulators and frustrated the operation of the New York Workers Compensation Rating Plan.

91. Upon information and belief, Mr. Silver was aware that the Continental Policy was part of one of the programs sanctioned by the DFS.

92. The California Department of Insurance identified Mr. Silver a "co-author" of the RPA program.

93. Further, Mr. Silver holds a patent (or patents) filed with the United State Patent and Trademark Office relating to the sanctioned programs.

94. Mr. Silver and Continental concealed the fact that the Continental Policy was part of a program banned by the DFS.

95. Mr. Silver and Continental further misrepresented that the amount of premium was determined by the terms and conditions of the Continental Policy.

96. Mr. Silver and Continental also concealed the existence of the RPA from the court.

97. Mr. Silver and Continental made the aforementioned misrepresentations and omissions with knowledge of their falsity.

98. Mr. Silver and Continental made such misrepresentations and omissions with the intent of having the court rely on them in issuing a default judgment.

99. Such misrepresentations and omissions were material and constituted a fraud on the court.

100. The court did in fact rely on Mr. Silver's affirmative misrepresentations and omissions, as its grant of a default judgment was expressly premised on the sworn statements contained in Mr. Silver's declaration.

101. Plaintiffs herein have suffered significant damages as a result of the aforementioned misrepresentations and omissions.

102. Seeing that Bulson had not appeared in the Continental Action, Plaintiffs incurred significant legal expense in attempting to intervene in the Continental Action.

103. Further, but for the aforementioned misrepresentations and omissions, Plaintiffs would not be incurring the expenses associated with prosecuting the instant action.

104. Plaintiffs have incurred damages, been deprived of the benefit of insurance coverage that Continental has wrongfully refused to provide and remain exposed to the risk that obligations which are the rightful obligation of Continental will remain unfulfilled without a declaration from this Court settling the rights and obligations of the parties.

105. Plaintiffs have complied with any required conditions precedent to the enforcement of rights against Continental and have no adequate remedy at law.

106. Continental's unclean hands render its resort to this Court for equitable relief unavailing.

107. As such, Continental has waived the right to maintain and/or is estopped from maintaining the defenses to coverage it relies upon.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Relief – Continental must, as a matter of law, indemnify Bulson for the judgment secured by Plaintiffs in the Wang Litigation)**

108. Plaintiffs repeat, reiterate, and re-allege all of the allegations contained in paragraphs 1-103 as if set forth fully herein.

15

109. As insurer cannot deny workers' compensation benefits or employer's liability coverage based on an insured-employer's failure to disclose an off-the-books worker.

110. Indeed, the Continental Policy contains no exclusions or conditions that would permit Continental to deny coverage for the claims asserted in the Wang Litigation.

111. Further, workers compensation and employer's liability policies cannot be retroactively cancelled or voided based on an insured-employer's failure to disclose an off-the-books worker to the insurer, as per New York State Workers' Compensation Law § 54.

112. Plaintiffs secured a judgment against Bulson in the Wang Litigation for $21,000,000.

113. Bulson's general liability and excess liability insurers satisfied $5,000,000 of that judgment.

114. The remaining $16,000,000 has been satisfied by Plaintiffs.

115. As such, Plaintiffs are entitled to a declaration that Continental was obligated to defend and indemnify Bulson in connection with the Wang Litigation,

116. Plaintiffs are further entitled to an order directing Continental to pay Plaintiffs $16,000,000, the amount of the Wang Litigation judgment satisfied by Plaintiffs, along with prejudgment interest, plus the costs and fees associated with bringing this action.

### AS AND FOR SECOND CAUSE OF ACTION
**(Declaratory Relief – Insurance Law § 3420(d)(2))**

117. Plaintiffs repeat, reiterate, and re-allege all of the allegations contained in paragraphs 1-112 as if set forth fully herein.

118. Continental erroneously argues that Bulson breached a policy condition by failing to disclose Wang as one of its employees.

119. The Continental Policy contains no such conditions.

16

120. Continental has waived the right to disclaim coverage on the basis of policy exclusions or conditions.

121. Continental learned in November 2017 (at the latest) that Wang was a Bulson employee.

122. Despite this, it never issued declinations to either Bulson or Plaintiffs, both of whom are interested claimants within the meaning of New York Insurance Law § 3420(d)(2).

123. Instead, it waited nearly 2 ½ years before instituting the Continental Action.

124. Such a delay is, as a matter of law, unreasonable.

125. As such, Plaintiffs are entitled to a declaration that Continental has waived the right to contest coverage and was thus obligated to defend and indemnify Bulson in connection with the Wang Litigation.

126. Plaintiffs are further entitled to an order directing Continental to pay Plaintiffs $16,000,000, the amount of the Wang Litigation judgment satisfied by Plaintiffs, along with prejudgment interest, plus the costs and fees associated with bringing this action.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Contract)**

127. Plaintiffs repeat, reiterate, and re-allege all of the allegations contained in paragraphs 1-122 as if set forth fully herein.

128. Pursuant to New York Insurance Law § 3420(b), as a judgment creditor, Plaintiffs now step into the shoes of Bulson and are entitled to assert all claims available to it under the Continental Policy.

129. The Continental Policy provides that "[i]n return for the payment of the premium and subject to all terms of this policy, we agree with you as follows….:

130. The agreements referred to include the agreement in the employer's liability coverage part to "pay all sums that you must legally pay as damages because of bodily injury to your employees . . . for which you are liable to a third party by reason of a claim or suit against you by that third party as a result of injury to your employee… '

131. There are no terms or conditions in the Continental Policy that would permit the insurer to deny coverage for the Wang Litigation.

132. The Continental Policy clearly promises indemnity against third-party claims such as those asserted by the Industria Parties against Bulson.

133. Continental, in refusing to indemnify Bulson, has materially breached the terms of the Continental Policy.

134. Plaintiffs have been damaged by this breach, as they have had to satisfy the $16,000,000 that was due and owing to the Wang plaintiffs after Bulson's general liability and excess liability insurers contributed their policy limits.

135. Accordingly, Plaintiffs are entitled to an Order directing Continental to pay them $16,000,000 plus prejudgment interest from the date of the breach.

**WHEREFORE**, Plaintiffs respectfully seek a Judgment:

(1) Granting Plaintiffs' First Cause of Action and Declaring, pursuant to 28 USC § 2221, that Continental was obligated to defend and indemnify Bulson against the allegations raised in the Wang Litigation and that it must now pay to Plaintiffs the $16,000,000 that paid by or on behalf of Plaintiffs to satisfy the judgment, along with prejudgment interest and the costs and fees associated with bringing this action;

(2) Granting Plaintiffs' Second Cause of Action and Declaring, pursuant to 28 USC § 2221, that, to the extent that the Continental Policy contains any exclusions or conditions that may apply to the allegations raised in the Wang Litigation, Continental has waived the right to disclaim coverage by operation of New York Insurance Law § 3420(d)(2) because it did not issue a disclaimer of coverage as soon as reasonably possible and did not provide notice of disclaimer to all interested claimants as required by the statute, and therefore the defenses on which

Continental relies are subject to waiver and/or estoppel;

(3) Granting Plaintiffs' Third Cause of Action for breach of contract and Ordering Continental to pay $16,000,000 in damages to Plaintiffs, plus prejudgment interest; and

(4) Granting such other, further and different relief on the declarations of rights and legal limitations of the parties to this action as this Court may deem just, proper and equitable.

Dated: New York, New York
January 23, 2025

                        Yours, etc.,

                        STRIKOWSKY DRACHMAN & SHAPIRO PLLC

                        By:   /s/ Sim Shapiro_____
                              Sim R. Shapiro
                              Bruce M. Strikowsky
                              Erik Kallhovd

Attorneys for Plaintiffs
2939, LLC, DAVID WEISS, LINDA WEISS, INDUSTRIA SUPERSTUDIO OVERSEAS, INC. INDUSTRIA WORLD LLC., INDUSTRIA @ SEA, INC., BORGO GUGLIELMO, LLC. and MASSACHUSETTS BAY INSURANCE COMPANY
111 Broadway, Suite 1103
New York, New York 10006
(212) 970-7111

19