UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

2939, LLC, DAVID WEISS, LINDA WEISS,            Case No.1:21-cv-00729-RPK-RML
INDUSTRIA SUPERSTUDIO OVERSEAS, INC.
INDUSTRIA WORLD LLC., INDUSTRIA
@ SEA, INC., BORGO GUGLIELMO, LLC.
and MASSACHUSETTS BAY INSURANCE
COMPANY,

                                  Plaintiffs,

          -against-

CONTINENTAL INDEMNITY COMPANY,

                                 Defendant.

----------------------------------------------------------------x

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
CONTINENTAL INDEMNITY COMPANY'S MOTION TO STRIKE, PURSUANT
TO FED. R. CIV. P. 12(F), AND MOTION TO DISMISS, PURSUANT TO
FED. R. CIV. P. 12(B)(6)**

---

STRIKOWSKY DRACHMAN & SHAPIRO PLLC
Sim R. Shapiro
Bruce M. Strikowsky
Erik Kallhovd
*Attorneys for Plaintiffs*
111 Broadway, Suite 1103
New York, New York 10006
(212) 970-7111

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ....................................................................................ii-iii

PRELIMINARY STATEMENT ................................................................................1

FACTS AND PROCEDURAL HISTORY ................................................................4

I.     Standards Governing Motions to Strike and Motions for Failure to State a Claim ..........11

     a.  Standard governing Rule 12(f) motions ...............................................................11
     b.  Standard governing Rule 12(b)(6) motions .................................................11

II.     ARGUMENT ....................................................................................................12

     A.  The Motion to Strike ..........................................................................12

          i.    The allegations concerning the DFS Consent Order should
              not be stricken because they are admissible and are highly relevant
              to the issues in the case ..................................................................13

          ii.   Plaintiffs' allegations concerning the concealment of the First
              Amended Complaint that the Policy's premium was dictated
              by the terms of the RPA should not be stricken...........................16

          iii.  Plaintiffs do not seek to vacate the Default Judgment ..................................18

     B.  Plaintiffs' Second Cause of Action states a claim for which relief
        can be granted ..................................................................................18

CONCLUSION......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 570 ................................................................................................ 11

Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co.,
  27 AD3d 84 [1st Dept 2005] ............................................................................... 19

Estee Lauder, Inc. v. Fragrance Counter, Inc.,
  189 F.R.D. 269 (S.D.N.Y. 1999) ................................................................... 17, 18

David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.,
  934 F. Supp. 2d 533 (E.D.N.Y.) ..................................................................... 11, 12

First Fin. Ins. Co. v Jetco Contr. Corp.,
  1 N.Y.3d 64 (2003) .............................................................................................. 19

G.L.M. Sec. & Sound, Inc. v Lojack Corp.,
  2012 US Dist. LEXIS 142549 [EDNY Sep. 28, 2012, No. 10-CV-4701 (JS)(ARL)] ........... 11

In re Mylan N.V. Sec. Litig.,
  379 F Supp 3d 198 [SDNY 2019] ........................................................................ 13

In re Platinum & Palladium Commodities Litig.,
  828 F Supp 2d 588 [SDNY 2011] ........................................................................ 15

JT Magen v Hartford Fire Ins. Co.,
  64 AD3d 266 [1st Dept 2009] ......................................................................... 19, 23

Kramer v. Time Warner Inc.,
  937 F.2d 767 (2d Cir.1991) .................................................................................. 12

L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc.,
  198 F.3d 85 (2d Cir. 1999) ................................................................................... 17

Metlife Auto & Home v Agudelo,
  8 AD3d 571 [2d Dept 2004] ................................................................................. 23

Pani v. Empire Blue Cross Blue Shield,
  152 F.3d 67 (2d Cir. 1998) ................................................................................... 12

Shahzad v H.J. Meyers & Co.,
  1997 US Dist. LEXIS 1128 [SDNY Feb. 4, 1997, 95 Civ. 6196 (DAB)] ....................... 14, 15

Sierra v 4401 Sunset Park, LLC,
    24 NY3d 514 [2014] ........................................................................... 19

State Farm Mut. Auto. Ins. Co. v Laguerre,
    305 AD2d 490 [2d Dept 2003] ...................................................... 22, 23

United States v. Gilbert,
    668 F.2d 94 (2d Cir. 1981) ................................................................. 13

Utica Mut. Ins. Co. v Reid,
    22 AD3d 127 [1st Dept 2005] ...................................................... 21, 22

W. 16th St. Tenants Corp. v Pub. Serv. Mut. Ins. Co.,
    290 A.D.2d 278 (1st Dep't 2022) ...................................................... 19

Zappone v Home Ins. Co.,
    55 NY2d 131 [1982] .......................................................................... 18

**Statutes**

28 U.S.C. § 2201 ................................................................................... 7, 21

Insurance Law § 3420 ...................................................................... *passim*

Workers' Compensation Law § 11 ................................................... *passim*

**Rules**

FED. R. CIV. P. 12 ........................................................................... *passim*

FRE 408 ................................................................................................. 15

Plaintiffs 2939, LLC, DAVID WEISS, LINDA WEISS, INDUSTRIA SUPERSTUDIO OVERSEAS, INC. INDUSTRIA WORLD LLC., INDUSTRIA @ SEA, INC., BORGO GUGLIELMO, LLC[1]. and MASSACHUSETTS BAY INSURANCE COMPANY (collectively, "Plaintiffs") submit this Memorandum of Law, the Supporting Declaration of Erik Kallhovd, Esq. ("Kallhovd Dec."), and the exhibits annexed thereto in Opposition to Defendant Continental Indemnity Company's ("Continental") Motion to Strike, pursuant to Fed. R. Civ. P. 12(f), and Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

As set forth herein, the Court should deny Continental's motion in its entirety.  The Court should deny the portion of the motion seeking to strike paragraphs 61 through 107 of Plaintiffs' First Amended Complaint because those allegations relate directly to the insurance policy and claim(s) at issue here and thus have a direct bearing on the case.  To prevail on a Rule 12(f) motion, which are seldom granted, the movant must demonstrate, *inter alia*, that: (1) no evidence in support of the allegations it seeks to strike would be admissible; and (2) the allegations have no bearing on the issues in the case.  Continental disregards this standard, indiscriminately seeking to strike *forty-seven* clearly relevant paragraphs from the First Amended Complaint. Continental claims that in these paragraphs, Plaintiffs improperly ask this Court to vacate the default judgment dated November 19, 2020 (the "Default Judgment") entered against Bulson Management, Inc. ("Bulson") in an earlier action (the "SDNY Action").[2]  This claim is makes little sense because:

---

[1] Plaintiffs 2939, LLC, DAVID WEISS, LINDA WEISS, INDUSTRIA SUPERSTUDIO OVERSEAS, INC. INDUSTRIA WORLD LLC., INDUSTRIA @ SEA, INC., and BORGO GUGLIELMO, LLC are collectively referred to herein as the "Industria Parties."
[2] Continental Indemnity Co. v. Bulson Mgmt., LLC, No. 20-CV-3479 (JMF) (S.D.N.Y.)

(a) the Default Judgment is not binding upon the Plaintiffs; and (b) Plaintiffs ask for no such relief. As such, the Court should Continental's argument no weight.

Plaintiffs raise allegations concerning the Default Judgment not in any attempt to have it vacated, but rather to assail Continental's insurance coverage position *in this action* and the proofs on which this position is based. Continental's position is that it has no obligation to extend employer's liability coverage for the underlying <u>Wang</u> litigation because Bulson failed to report Wang as an employee on its payroll submissions to the insurer. In the SDNY Action, Bulson submitted the Declaration of Jeffrey Silver in support of its motion for a default judgment. Mr. Silver annexed a copy of the policy issued by Continental to Bulson (the "Policy"), which reflected that it was a guaranteed cost policy with a certain, fixed premium. He averred that Continental would not have issued the Policy at the premium charged, but would have instead issued it at a higher premium.

However, after Plaintiffs instituted this action, they discovered that the Policy belonged to a suite of products now banned by the New York State Department of Financial Services (the "DFS"). Under this program, Continental insureds were obligated to execute separate side agreements called "Reinsurance Participation Agreements" ("RPAs"), which was done without the knowledge or approval of the DFS. *As is relevant here, the premiums charged to insureds like Bulson were determined by these illegal RPAs. The premiums charged to insureds were not the static amounts listed on the policies' declarations pages, as sworn to by Mr. Silver, but instead fluctuated based on the insured's history of losses and its regular payroll submissions made to Continental.* Continental's motion to strike has nothing to do with concerns that Plaintiffs seek to vacate the Default Judgment—and it is evident that Plaintiffs do not seek to vacate it. Rather, the motion to strike is a thinly veiled attempt to shield from discovery the true premiums that were

paid by Bulson pursuant to the RPA it executed. The allegations concerning the RPAs, the Default Judgment, and the proofs offered by Continental in the SDNY Action, are all relevant to the issues before Your Honor. As such, the motion to strike should be denied.

The Court should also deny that part of Continental's motion seeking dismissal of Plaintiffs' Second Cause of Action. That Cause of Action seeks a declaration that Continental has waived the right to disclaim coverage pursuant to New York Insurance Law ("NYIL") § 3420(d)(2) because it did not issue a timely disclaimer. To be clear: Plaintiffs' position is that, as a matter of law, an insurer can never deny employer's liability coverage based on an insured's failure to disclose the existence of an employee when procuring the policy. Indeed, Plaintiffs ultimately intend to seek permission to make a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings on this issue.

Even assuming, *arguendo*, that the failure to disclose an employee when procuring a policy is a legitimate basis for denying employer's liability coverage, Plaintiff's Second Cause of Action unquestionably states a claim upon which relief can be granted. Continental's coverage position is that Bulson breached a policy *condition* by failing to disclose Wang as an employee in its payroll submissions to the insurer. This is what the insurer alleged in the opening paragraph of its complaint in the SDNY Action (though it tries to walk those claims back here). Pursuant to NYIL § 3420(d)(2), New York law provides that when an insured breaches a policy condition, then the insurer must issue a disclaimer as soon as reasonably possible upon learning of the breach or else it waives the right to deny coverage, Here, Continental *never* issued a disclaimer, and it did not file a declaratory judgment action for more than two years after learning that Bulson did not disclose Wang as an employee. Such a delay is unreasonable as a matter of law. As such, Plaintiffs'

3

Second Cause of Action states a claim upon which relief can be granted. Therefore, Continental's motion should be denied in its entirety.

## FACTS AND PROCEDURAL HISTORY

This declaratory judgment action arises from an accident in which Ri Xian Wang ("Wang") fell from a ladder while performing construction work for his employer, non-party Bulson, in July 2016. ECF Doc. No. 62, First Amended Complaint ¶15.

The Underlying Action

Wang filed suit seeking damages for the injuries he sustained as a result of incident, which included permanent paralysis. *Id*. The litigation commenced by Wang and his wife, Mei Ying Lin, captioned Wang, et al. v. Industria Superstudio, et al., Index No. 519101/2016 (Supreme Court, Kings County) (the "Wang Litigation"), named the Industria Parties as defendants. *Id*. at ¶¶1, 16. The Wangs alleged that the Industria Parties were statutorily and/or vicariously liable for injuries sustained by Wang in the scope and course of his employment with Bulson. *Id*. at ¶16. Thereafter, the Industria Parties filed a third-party complaint seeking contractual and common-law contribution and indemnification from Bulson. *Id*. at ¶17.

Since Wang suffered a "grave injury" within the meaning of New York State Workers' Compensation Law § 11 while working for Bulson, Continental was called upon to provide coverage under the Policy. *Id*. at ¶22. The Policy is a New York Workers' Compensation and Employers Liability Policy" bearing policy number 46-227428-01-02 with a policy period of May 7, 2016-May 7, 2017. *Id*. at ¶23. The Policy provides unlimited Workers' Compensation and Employers' Liability coverage on a statutorily-approved form provided by the New York Compensation Insurance Ratings Bureau, of which Continental is a member. *Id*. at ¶24.

4

Ultimately, by judgment entered on June 23, 2023, the Wangs were awarded $21,000,000 after a non-jury trial and judgment was entered in their favor against the Industria Parties. *Id*. at ¶18.  In turn, the Industria Parties were awarded judgment on their claims for contractual and common law indemnity against Bulson in the amount of $21,000,000—the full amount awarded to the Wangs. *Id.* at ¶19. The Wangs were paid $5,000,000 by Bulson's general liability and excess insurers on behalf of the Industria Parties. *Id*. at ¶20. The remaining $16,000,000 of the judgment was paid by Massachusetts Bay Insurance Company on behalf of the Industria Parties. They have not been indemnified for said payments and the remaining judgment of indemnity in the third-party action against Bulson remains unpaid.  *Id*. at ¶21.

The Workers Compensation Board Proceeding

In proceedings before the New York State Workers' Compensation Board ("WCB"), it was determined that Bulson was Wang's employer.  *Id*. at ¶¶25-26.  On or about May 4, 2020—over two years after the WCB determined that Wang was a Bulson employee—Continental filed the SDNY Action. *Id*. at ¶30.  Continental sought, *inter alia*, a declaration that the Continental Policy did not provide employer's liability coverage for the claims asserted against Bulson in the Third-Party Complaint in the Wang Litigation. *Id.* at ¶32.  However, prior to filing the SDNY Action, Continental never issued a disclaimer of coverage. *Id*. at ¶34.

The SDNY Action

In the SDNY Action, Continental claimed it was relieved of any duty to provide the bargained-for insurance coverage because Bulson had fraudulently concealed that Wang was its employee, relying on the fact that: (a) the WCB determined that Bulson was Wang's employer; and (b) Bulson had not identified Wang as an employee in its payroll submissions to Continental.

5

*Id*. at ¶38.   However, Continental did not seek rescission of the Policy because workers' compensation and employer's liability policies cannot be voided *ab initio*; such policies can be cancelled only prospectively. *Id*. at ¶39.  Continental alleged that no coverage was owed for the Wang Litigation because of Bulson's failure to comply with a purported policy condition regarding payroll reporting. *Id*. at ¶43.

Continental alleged in the SDNY Action that "accurate payroll reporting is a material condition to insurance coverage under the Continental Policy," that "[t]he terms of the Continental Policy confirm that complete and accurate payroll reporting is a material condition of continuing insurance coverage," and that Bulson breached these conditions. *Id*. at ¶44. However, an examination of the Continental Policy's conditions section reveals that no such condition existed in the Policy (and, further, an examination of the Policy reveals no exclusion that bars coverage for an off-the-books employee not disclosed to the insurer).  *Id*. at ¶45.  Bulson did not appear in the SDNY Action and, accordingly, Continental moved for a default judgment. *Id*. at ¶61.  The court granted Continental's default application, holding that Continental could deny defense and indemnity to Bulson in the <u>Wang</u> Litigation. *Id*. at ¶62.

As the Court is aware, Plaintiffs attempted to intervene in the SDNY Action, but their motion was denied. Plaintiffs thus instituted this plenary action to challenge Continental's disclaimer.  By Memorandum and Order dated September 21, 2023, the Court initially dismissed Plaintiffs' complaint on the basis that the Default Judgment against Bulson was binding on Plaintiffs under principles of *res judicata*. ECF Doc.53.   In support of its motion to dismiss, the discussion of Default Judgment featured prominently, with Continental not only arguing that principles of *res judicata* mandated dismissal but also urging before this court that Judge Furman's decision on the motion for default judgment in the SDNY action was correct. *See* ECF Doc. No.

44 at 13 (stating that "Judge Furman's determination that Bulson's fraudulent misrepresentations and omissions concerning Wang's employment status bar employer's liability coverage under the Policy for the Wang Litigation also was correct.")

Plaintiffs appealed, and the United States Court of Appeals for the Second Circuit reversed the decision dismissing the complaint and held that Plaintiffs could indeed seek recovery from Continental. 2939, LLC v. Cont'l Indem. Co., No. 23-7466, 2024 U.S. App. LEXIS 26783 (2d Cir. Oct. 23, 2024). The court found that "[t]he default judgment did not 'actually litigat[e]' whether Continental was required to defend and indemnify Bulson under the policy," and it thereby afforded Plaintiffs the opportunity to litigate Continental's coverage position on the merits. *Id*. at *9-10. The court noted that "Bulson's rights as an insured [should not be conflated] with the judicial determination of those rights. Whether [Plaintiffs] may recover depends on Bulson's rights as an insured, but a judicial determination of those rights is only binding if principles of preclusion so dictate. Otherwise, [Plaintiffs] must have their own 'full and fair opportunity' to litigate the issues. *Id.* at *9 (citation omitted).

Accordingly, after the action was reinstated, the Plaintiffs amended their complaint to assert new allegations based on discoveries made during the pendency of this litigation. ECF Doc. No. 62. Plaintiffs assert two causes of action seeking declarations, pursuant to 28 U.S.C. § 2201, *et seq*., that: (a) they are entitled to indemnification from Continental for the judgment in the Wang Action; and (b) Continental waived the right to disclaim coverage as per NYIL § 3420(d)(2).

In the First Amended Complaint, Plaintiffs allege that the Default Judgment was improperly obtained because the proofs annexed to Continental's default motion contained material misrepresentations and omissions. ECF Doc. No. 62, ¶74. Continental's default application was supported by the Declaration of Jeffrey A. Silver, dated August 10, 2020 (the

"Silver Declaration"). Mr. Silver annexed to his Declaration a copy of the Continental Policy and a set of underwriting guidelines, which referenced, *inter alia*, an insurance product called Solution One. *Id*. at ¶80. Mr. Silver represented to the Court that, "[i]f Wang had been disclosed to Continental prior to issuance of the Policy, Continental would have charged Bulson $3,836.22 in additional premium." *Id*. at ¶77. Mr. Silver further averred that, "[a]s set forth in the Continental Policy, the premium due from Bulson thereunder was to be calculated based on the payroll information provide by Bulson and the statutorily-approved insurance rates applicable to the classes of workers Bulson employed." *Id*. at ¶78. The Default Judgment was granted on the basis of the Silver Declaration and, as noted above, Continental stands by the Silver Declaration, which also forms the basis for its coverage position in this action.

During the pendency of this litigation, Plaintiffs discovered that the underwriting guidelines annexed to Mr. Silver's declaration were the underwriting standards for, *inter alia*, insurance programs called SolutionOne and EquityComp. *Id*. at ¶80. The Policy belonged to one of these two programs – programs whose sale has been banned in New York (as well as a number of other states). *Id*. at ¶81. As part of a Consent Order, the DFS fined Continental and its sister companies $3,000,000 and banned the future sale and marketing of the SolutionOne and EquityComp products in New York State. *Id*. at ¶82. A copy of the Consent Order is submitted herewith as **Exhibit "A."** The DFS alleged that Continental sold workers' compensation and employer's liability policies to New York insureds that impermissibly utilized side agreements – RPAs - that were neither filed with nor approved by the DFS. ECF Doc. No. 62, ¶83. The RPAs were entered into between New York insureds and Continental affiliate, non-party Applied Underwriters Captive Risk Assurance Company ("AUCRA"). *Id*. at ¶84. The RPAs were not

provided to New York State's insurance regulators in conjunction with required approvals of rates and forms and the supervision of authorized insurers. *Id*. at ¶85.

Plaintiffs raised allegations concerning the sanctioned programs because it discovered that it was RPAs that actually governed the true premium paid by Continental's insureds, not the amount listed on the Policy declarations, as was sworn to in the Silver Declaration. *Id*. at ¶86; *see also*, **Exhibit "A,"** ¶11 (stating that "[t]he RPAs . . . modified and superseded the agreement established by the guaranteed-cost policies"). Premiums would instead fluctuate based on, *inter alia*, the number of claims filed by the insured's employees and the insured's payroll submissions to Continental. ECF Doc. No. 62 at ¶86.

The Silver Declaration did not disclose the existence of the RPA program to Judge Furman. Plaintiffs allege in the First Amended Complaint that by having Bulson execute an RPA, Continental contravened the terms of the Continental Policy, which provides that, "[t]he only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by [Continental] to be part of the policy." *Id.* at ¶89. Plaintiffs alleged that, upon information and belief, Mr. Silver was aware that the Continental Policy was part of one of the programs sanctioned by the DFS. *Id.* at ¶91. Plaintiffs further allege that the California Department of Insurance identified Mr. Silver as a "co-author" of the RPA program and he holds a patent (or patents) filed with the United State Patent and Trademark Office relating to the sanctioned programs. *Id.* at ¶¶92-93.

Accordingly, Plaintiffs allege that Mr. Silver (who signed the Consent Order on Continental's behalf – *see* Kallhovd Dec., **Exhibit "A"**) and Continental concealed that the Continental Policy was part of a program banned by the DFS. ECF Doc. No. 62, ¶94. Plaintiffs further allege that Mr. Silver and Continental misrepresented that the amount of premium was

determined by the terms and conditions of the Policy and that they also concealed the existence of the RPA from the court. *Id.* at ¶¶95-96.  Plaintiffs further allege that such misrepresentations and omissions were material, since Judge Furman's grant of the Default Judgment was expressly premised on the sworn statements contained in the Silver Declaration. *Id.* at ¶¶97-100.

Plaintiffs also amended their complaint to assert a cause of action seeking a declaration that Continental waived the right to disclaim coverage pursuant to NYIL § 3420(d)(2).  ECF Doc. 62, Second Cause of Action, ¶¶117-126.  Plaintiffs base this cause of action on Continental's coverage position as asserted in the SDNY Action. As noted above, Continental alleged that no coverage was owed for the <u>Wang</u> Litigation because of Bulson's failure to comply with a purported policy condition. Continental claimed that "accurate payroll reporting is a material condition to insurance coverage under the Continental Policy," "[t]he terms of the Continental Policy confirm that complete and accurate payroll reporting is a material condition of continuing insurance coverage," and that Bulson breached these conditions. *Id.* at ¶¶43-44.  Plaintiffs allege that no such condition exists in the Policy (which Plaintiffs believe is instead contained in the RPA that was not put before Judge Furman). *Id.* at ¶45.   Plaintiffs further allege that to the extent that such a condition exists in the Policy, Continental has necessarily waived the right to disclaim coverage pursuant to NYIL § 3420(d)(2). *Id.* at ¶60.   Specifically, Plaintiffs allege that: (a) NYIL § 3420(d)(2)'s timely disclaimer requirement applies to conditions precedent; and (b) Continental waived the right to rely on any such condition by waiting 2 ½ years from learning that Wang was a Bulson Employee before filing the SDNY Action. *Id.* at ¶120-126.

## I.      Standards Governing Motions to Strike and Motions for Failure to State a Claim

### a.   Standard governing Rule 12(f) motions

Fed. R. Civ. P. 12(f) permits a court to strike from a pleading "immaterial, impertinent, or scandalous matter."  However, "motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." G.L.M. Sec. & Sound, Inc. v Lojack Corp., 2012 US Dist LEXIS 142549, at *19 [EDNY Sep. 28, 2012, No. 10-CV-4701 (JS)(ARL)] (*quoting* Colabufo v. Continental Cas. Co., No. 04-CV-1863, 2006 U.S. Dist. LEXIS 28957, 2006 WL 1210919, at *6 (E.D.N.Y. April 27, 2006); *see also*, Lynch v. Southampton Animal Shelter Found. Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (same).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues."  42-50 21st St. Realty LLC v First Cent. Sav. Bank, 2022 US Dist LEXIS 184174, at *19  [EDNY Oct. 7, 2022, No. 20-CV-5370 (RPK) (*quoting* Brady v. Basic Research, L.L.C., 101 F.Supp.3d 217, 225 (E.D.N.Y. 2015))." In short, to prevail on a Rule 12(f) motion to strike, the movant must show that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." 42-50 21st St. Realty LLC, at *20.

### b.   Standard governing Rule 12(b)(6) motions

To survive a 12(b)(6) motion to dismiss, a complaint must plead enough "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 2007).  "In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  David

Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co., 934 F. Supp. 2d 533, 538 (E.D.N.Y.), *aff'd*, 542 F. App'x 89 (2d Cir. 2013) (citing Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005)).

Further, on a 12(b)(6) motion, the Court can consider all of the following:

> (1) Facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be . . . filed . . , and (5) Facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

David Lerner Assocs., Inc., 934 F. Supp. 2d at 539.

Moreover, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); *see also*, Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991) (holding that the Court may consider "documents required by law to be filed" on a 12(b)(6) motion).

## II.    **Argument**

### A.    The Motion to Strike

The Court should deny Continental's motion to strike because the allegations it seeks to strike go to the heart of Continental's claims concerning the premium it charged to Bulson.  As noted above, to prevail on a motion to strike, which are rarely granted, the movant must show that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." 42-50 21st St. Realty LLC, at *20.  Notably, Continental omits this legal

standard from its affirmative brief, and it makes no effort to demonstrate any of the aforementioned elements in its papers.  In any event, Continental cannot meet this burden.  The allegations Continental wishes to strike concern either: (a) the proofs offered by Continental in the SDNY Action, *which relate to the same Policy and claim at issue in this litigation*; and (b) evidence that the Policy was part of a program where the premium was charged to Bulson was determined *not* by the premium stated on the Policy Declarations, but instead by a side agreement that was not disclosed to the Court.  These allegations do not merely have bearing on the issues in the case, they go to the heart of Continental's claim that it would have charged a different premium than that stated on the Policy Declarations had Bulson disclosed Wang as an employee.  As such, the Court should deny Continental's motion to strike without regard to Plaintiffs' opposition.

       i.    The allegations concerning the DFS Consent Order should not be stricken <u>because they are admissible and are highly relevant to the issues in the case</u>

Even though Continental fails to meet its *prima facie* burden, Plaintiffs will, nevertheless, address Continental's arguments, all of which fail as a matter of law.  First, there is no legal support for Continental's claim that the Court should strike allegations concerning the DFS Consent Order.  Striking unadjudicated allegations from other actions goes against weight of authority in this Circuit, "which holds that plaintiffs may base factual allegations on complaints from other proceedings because 'neither Circuit precedent nor logic supports . . . an absolute rule' against doing so."  <u>In re Mylan N.V. Sec. Litig</u>., 379 F. Supp 3d 198, 214 (S.D.N.Y. 2019), *quoting* <u>Youngers v. Virtus Inv. Partners Inc.</u>, 195 F. Supp. 3d 499, 516 n.10 (S.D.N.Y. 2016).  Further, where facts from a consent order are pleaded for purposes other than demonstrating that the defendants were liable for the violations alleged in the consent order, then such allegations should not be stricken by the Court. *See* <u>United States v. Gilbert</u>, 668 F.2d 94, 97 (2d Cir. 1981) (stating that "decree was clearly admissible under Fed. R. Evid. 404(b) to show that Gilbert knew of the

13

SEC reporting requirements involved in the decree").   Here, Plaintiffs do not raise allegations concerning the DFS Consent Order to demonstrate that Continental violated the law by issuing an unapproved insurance product.  Rather, Plaintiffs raise such allegations to show that the premium paid for the Policy was dictated by the RPA and was *not* the premium as sworn to by Continental's witness in the SDNY Action.[3]

Continental ignores this authority and instead cites cases addressing factually distinguishable scenarios.  In <u>Shahzad v. H.J. Meyers & Co.</u>, 1997 U.S. Dist. LEXIS 1128 (S.D.N.Y. Feb. 4, 1997, 95 Civ. 6196 (DAB)), an investor brought a securities fraud action against his stockbroker and his stockbroker's employer.  In his complaint, the consumer raised allegations in two discrete paragraphs—he did not indiscriminately seek to strike 46 paragraphs—that concerned prior consent orders. In striking the allegations, the court noted that "[m]aterials will . . . be stricken if they serve no purpose except to inflame the reader," and "motions to strike, while not favored, may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." <u>Id</u>. at *39-40.  Here, Plaintiffs do not raise allegations

---

[3] In reply, Continental may argue that amounts paid pursuant to the RPAs do not constitute policy premiums.  However, courts and insurance commissioners throughout the country have routinely dismissed this argument in finding that Continental and affiliated companies have overcharged businessowners for workers compensation insurance. For instance, in <u>In re Shasta Linen Supply, Inc.</u>, No. AHB-WCA-14-31 (Cal. Ins. Comm'r, June 22, 2016), the California Insurance Commissioner ordered a Continental affiliate to return money to the insured that it paid pursuant to the terms of the RPA that was in excess of the amount of premium set forth on the policy declarations.  The Commissioner dismissed the argument that monies paid pursuant to the RPA were not workers compensation premiums:

> [Continental affiliate company California Insurance Company] . . . stat[es that] the RPA charges program fees, not premiums.  While CIC is careful to call EquityComp costs 'program costs' and not premiums, this is a distinction without a difference. Indeed . . . the patent application [on the RPA-based insurance programs] itself calls the costs under the RPAs 'premiums.' Moreover, money paid by an insured to an insurer for coverage constitutes premium regardless of the name.  This, of course, is consistent with the structure of the program.

*Id.* at 48-49.

A copy of this unreported decision, which explains in detail how the RPA-based insurance policies operated, is annexed to the Kallhovd Dec. as **Exhibit "B."**

concerning the Consent Order to show that Continental violated the law in offering the RPA-based programs or to inflame the reader.  Rather, Plaintiffs raise allegations concerning the Consent Order because the Consent Order explains how the RPA-based programs operated and how the premiums charged to insureds were not the amounts stated on the policy declarations, contrary to the assertions made in the Silver Declaration.  Such premiums were not static but instead fluctuated based upon loss history and payroll submissions, as dictated by the RPA.  As such, Shahzad has no relevance here.[4]

The other decisions cited by Continental likewise provide no support for its argument that the Court should strike allegations concerning the Consent Order.  In re Platinum & Palladium Commodities Litig., 828 F Supp 2d 588, 592 (SDNY 2011) involved a class action lawsuit brought by investors against various commodities brokers.  Prior to the class action suit, the Commodities Futures Trading Commission ("CFTC") brought an administrative action against certain of the class action defendants. The CFTC action resolved as a result of a settlement and negotiated consent order.  The class action plaintiffs thereafter raised allegations concerning the consent order, seeking to hold the defendants liable for the *same conduct* as the CFTC.  As such, the court struck allegations relating to the CFTC consent order. Citing Federal Rule of Evidence 408, the Court noted that Rule 408 "bars evidence of a compromise to prove liability for the claim, *but specifically permits use of such evidence for other purposes.*" *Id*. at 594 (internal quotations, citations omitted, and emphasis added).  Here, however, Plaintiffs do *not* seek to hold Continental liable for the same

---

[4] The other case cited by Continental to support its claim that allegations from a consent order should be stricken from the complaint is distinguishable on much the same basis.  In Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 336 (Bankr. S.D.N.Y. 1999), the court stuck allegations from a complaint regarding past SEC and state enforcement actions against the brokerage firm depicted in the film "The Wolf of Wall Street," which were resolved via consent orders.  In striking the allegations, the court noted that they had "no bearing" on the issues before the Bankruptcy Court. *Id*.  Significantly, the defendants there sought to strike only two paragraphs from the pleadings, not 46, and the Court used a scalpel rather than a hatchet, permitting certain allegations in the aforementioned paragraphs to remain.

conduct as the DFS (i.e., marketing insurance products not approved by the DFS in violation of the Insurance Laws of the State of New York, which are the claims asserted in the Consent Order). Rather, Plaintiffs seek indemnification for the judgment in the <u>Wang</u> Litigation.  Plaintiffs seek to introduce evidence concerning the Consent Order for the purposes of impeaching/disputing Continental's claims regarding the Policy, how much premium Bulson paid, and how much it would have charged had it known that Wang was a Bulson employee.  Therefore, <u>In re Platinum & Palladium Commodities Litig</u> has no relevance here.

> ii.   Plaintiffs' allegations concerning the concealment of the fact that the Policy's premium was dictated by the terms of the RPA should not be <u>stricken.</u>

Plaintiffs' allegations that Continental concealed the existence of the RPA when it moved for the Default Judgment should likewise not be stricken.  Continental feigns outrage at such allegations, claiming it did no such thing:

> As plaintiffs admit, the declaration in support of Continental's motion included as an exhibit underwriting guidelines that ***openly discuss the insurance program that plaintiffs now claim was "concealed."***  This alone defeats plaintiffs' allegations that Continental intentionally "concealed" anything about the Policy's relationship to those programs.

Def. Brief at 10 (citations to ECF omitted) [emphasis added].  The Court should summarily dismiss this hyper-technical argument.  Such an argument presupposes that Judge Furman (and his court attorneys and clerks) would know on an unopposed default motion that: (a) the EquityComp and SolutionOne products mentioned in the underwriting guidelines were banned programs; (b) such programs required insureds to execute RPAs; and (c) Bulson executed an RPA; and (d) the RPA was the operative document that determined the premium charged, even though the Policy put before Judge Furman stated that "[t]he only agreements relating to this insurance are stated in this policy."  ECF Doc. No. 62, ¶89.  Continental may disagree with Plaintiffs' allegations that

16

Continental purposely concealed from Judge Furman the existence of the RPA and how much premium Bulson paid thereunder but Jeffrey Silver is a patent holder on the program, and he signed the DFS Consent Order on Continental's behalf.  He is intimately familiar with the RPA-based programs.  Plaintiffs thus allege that he knew of and should have disclosed the existence of the RPA, and how much premium Bulson paid thereunder.  There is a factual basis for making such arguments, which are made in good faith and are neither redundant, immaterial, impertinent, nor scandalous.  As such, the allegations concerning concealment should not be stricken.

The cases cited by Continental to support its claim that allegations concerning concealment should be stricken have no relevance here.  L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) did not address a Rule 12(f) motion to strike.  There, the court held that newly discovered facts could not form the basis of overturning an earlier summary judgment ruling.  However, the court noted that *res judicata* would *not* have applied had plaintiffs demonstrated that such facts were "fraudulently concealed or could not have been discovered earlier through plaintiff's due diligence," which is precisely what Plaintiffs allege here (and have previously argued before Your Honor).

The other decision cited by Continental, Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269 (S.D.N.Y. 1999), actually supports Plaintiffs' position here.  Continental cites Estee Lauder to support its claim that Plaintiffs seek to "inject irrelevant issues into the case that will only serve to increase the parties 'time and expense,' both in discovery and at trial, in this already drawn-out dispute."  Def. Brief at 10.  Yet, this dispute has been drawn out solely because Continental continues to make motions to dismiss.  In fact, there has been *no* discovery concerning the factual issues in either this action or the SDNY Action—an action that was decided on default.  In *dicta*, the court in Estee Lauder noted that a "motion to strike for insufficiency was never

intended to furnish an opportunity for the determination of disputed and substantial questions of law[,] . . . particularly [when] there has been no significant discovery." 189 F.R.D. at 272 (citation omitted). That is precisely what Continental seeks to do here: shut down Plaintiffs' ability to take discovery concerning the RPA and how much premium Bulson truly paid for the Policy. As the Second Circuit noted, Plaintiffs have not had the opportunity to actually litigate the *bona fides* of Continental's coverage position. 2939, LLC, at *9-10. Indeed, there has been no discovery taken whatsoever with regard to the issues before the Court. As such, the motion to strike should be denied.

### iii.    Plaintiffs do not seek to vacate the Default Judgment

Finally, Continental's argument that Plaintiffs seek to vacate the Default Judgment is without merit. Plaintiffs plainly do not seek such relief. As noted above, Plaintiffs raise allegations concerning the Default Judgment and the Silver Declaration because the arguments raised in the SDNY Action and the proofs placed before the court there form the basis for its coverage position for the Wang Litigation *in this action*. The allegations raised by Plaintiffs are neither redundant, immaterial, impertinent, nor scandalous. Rather, they are highly relevant and material to the claims at issue here. As such, the motion to strike should be denied in its entirety.

### B.    Plaintiffs' Second Cause of Action states a claim for which relief can be granted.

Plaintiffs' Second Cause of Action seeks a declaration that Continental has waived the right to contest coverage pursuant to NYIL § 3420(d)(2). That statute provides, in pertinent part, that an insurer "shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." *Id*. The statute's timely disclaimer requirement applies to disclaimers premised on policy exclusions, but not to claims falling outside the scope of a policy's insuring agreement. Zappone v Home Ins. Co., 55

NY2d 131, 134 (1982). Significantly, the timely disclaimer requirement also applies where, as here, denial is premised on an insured's breach of a condition precedent to coverage. JT Magen v Hartford Fire Ins. Co., 64 AD3d 266, 274 (1st Dept 2009). Such denials must not only be timely, but they must also be issued to all claimants entitled to notice under NYIL § 3420(d)(2), such as tort plaintiffs, and not just to the insured. Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co., 27 AD3d 84, 90 (1st Dept 2005); Sierra v 4401 Sunset Park, LLC, 24 NY3d 514 (2014). The "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." First Fin. Ins. Co. v Jetco Contr. Corp., 1 N.Y.3d 64, 68-69 (2003) (internal quotation marks and citations omitted). Courts have held that delays as short as 30 days to be unreasonable under § 3420(d)(2). *See, e.g.*, W. 16th St. Tenants Corp. v Pub. Serv. Mut. Ins. Co., 290 A.D.2d 278, 279 (1st Dep't 2022) (finding disclaimer based on late notice—a breach of a policy condition—was unreasonably late when disclaimer was issued 30 days after claim was received, since late notice is a defense that was obvious on its face and required no additional investigation by the insurer).

Based on this standard, Plaintiffs' Second Cause of Action states a valid claim that is not subject to dismissal. As alleged in the First Amended Complaint, Continental learned that Wang was a Bulson employee in November 2017. Yet it never issued a denial and did not even seek to disclaim until it filed the SDNY Action two-and-a-half years later. Continental further alleged in the first paragraph of its complaint in the SDNY Action that disclaimer was sought because Bulson breached a Policy condition, and denials of coverage premised on such breaches fall within the ambit of NYIL § 3420(d)(2). Whether such a condition was, in fact, breached is not a proper determination on a Rule 12(b)(6) motion. As such, the Court should deny Continental's motion to dismiss Plaintiffs' Second Cause of Action in the First Amended Complaint.

19

Further, the arguments raised by Continental in support of dismissal have no merit. Continental was required to issue a timely disclaimer as per NYIL § 3420(d)(2) because the claims asserted by Wang fall within the scope of the Policy's Employer's Liability Insuring Agreement. In its moving papers, Continental correctly notes that "[w]hen the 'insurance policy does not contemplate coverage in the first instance,' no disclaimer of coverage is required." Def. Brief at 13. However, Continental, quoting <u>Worcester Ins. Co. v. Bettenhauser</u>, 95 N.Y.2d 185, 188 (N.Y. 2000), then erroneously claims that "[t]he disclaimer requirement in N.Y.I.L. § 3420(d)(2) only applies where the "denial of coverage [is] based on a policy exclusion." Def. Brief at. 13. That is *not* the holding of <u>Bettenhauser</u> (and, as discussed *infra*, N.Y.I.L. § 3420(d)(2) applies with equal force to denials based on the breach of a policy condition) but the decision is nonetheless instructive.

<u>Bettenhauser</u> involved an auto policy's uninsured motorist endorsement that included in its definition of "insured" any family member who resided with the named insureds. The policy, however, had an exclusion providing that if the accident at issue occurred while the family member was occupying a vehicle that was not insured under the policy, then coverage was excluded. The court held that:

> timely disclaimer [as per NYIL § 3420(d)(2)] was necessary because Bettenhauser's claim falls squarely within the policy's coverage provisions set out in the "Insuring Agreement." The relevant conditions of the Insuring Agreement--none of which depend on the vehicle driven--are met: Bettenhauser is defined as an "insured" entitled to recover from an owner or operator of an underinsured motor vehicle for "bodily injuries" caused by an accident. Denial of coverage is predicated on one of the designated "Exclusions." But for a specified circumstance--here, the use of a family-owned motor vehicle not insured by the policy--Bettenhauser's claim would have been covered.

<u>Id</u>. at 190.

20

Here, as in <u>Bettenhauser</u>, the Wang "claim falls squarely within the policy's coverage provisions set out in the 'Insuring Agreement.'" <u>Id</u>.  As in <u>Bettenhauser</u>, where the policy broadly conferred coverage on family members, the Policy here broadly provides coverage for claims of "bodily injury by accident…[that]…must arise out of and in the course of the injured employee's employment by [Bulson]."  *See* Policy, Part Two(A), ECF Doc. No. 37-6.  Indeed, in the opening sentence of the opening paragraph of its complaint in the SDNY Action, Continental all but acknowledges that the Wang claim falls within the scope of the Policy's Insuring Agreement, stating that:

> This is an action for breach of contract, fraud, unjust enrichment, and a declaratory judgment pursuant to 28 U.S.C. § 2201 arising out of Bulson's failure to disclose to Continental that Wang was a Bulson employee before Wang was injured in a work-related accident on July 19, 2016

SDNY Action, ECF Doc. No. 11, ¶1.  As such, Continental was required to issue a timely disclaimer, as per NYIL § 3420(d)(2).

Because Continental cannot credibly argue that Wang's claims fell outside the scope of the Policy's Insuring Agreement, it misleadingly claims that "no disclaimer is required when, as here, an insurer denies coverage based on an insured's material misrepresentation."  Def. Brief at 13.  However, as set forth below, the cases cited by Continental do not support this proposition and, further, none address employer's liability coverage whatsoever.  Indeed, Continental cites no authority holding that an insurer can deny an employer's liability claim based on the employer's failure to disclose an off-the-books employee.

<u>Utica Mut. Ins. Co. v Reid</u>, 22 AD3d 127, 129 (1st Dept 2005) addressed an insured's fraudulent misrepresentation in the presentation of a claim for supplementary uninsured/underinsured motorists ("SUM") coverage.  SUM coverage is a *first-party* benefit where

an insured can get liability coverage from his or her own insurer.  It applies where the limits on the

tortfeasor's policy: (a) fall below the limits set forth in the relevant SUM endorsement; and (b) are

insufficient to provide redress for the insured's injuries.   In Reid, the insured affirmatively

misrepresented that he was injured while driving a minivan that was scheduled on the Utica policy

in order to obtain SUM coverage.  However, he was in fact injured while riding a motorcycle that

was not covered by Utica, but was instead covered under a different policy issued by Progressive—

a policy that did not confer SUM benefits.  The Court noted that the purpose of NYIL § 3420(d)(2)

is to prevent prejudice to a claimant based on an insurer's delay in denying coverage. There was

no prejudice to claimant Reid, however, because he knew that the accident did not occur while he

was occupying the insured minivan.  In contrast, in the case at bar, the claimants are third parties

seeking coverage for Bulson so that it may pay a judgment of indemnity for its tortious acts. The

Plaintiffs were *not* participants in the presentation of a fraudulent claim.  Rather, they are interested

claimants within the meaning if NYIL § 3420(d)(2) to whom a timely disclaimer should have been

issued.  As such, Reid has no applicability here.

The other case cited by Continental to support its argument that it need not issue a timely

denial is likewise inapplicable because the claim at issue there fell outside of the policy's insuring

agreement.  In State Farm Mut. Auto. Ins. Co. v. Laguerre, 305 A.D.2d 490 (2d Dept 2003), the

insured staged automobile accidents for the purpose of fraudulently obtaining insurance benefits.

Since the insuring agreement in an auto policy applies to *accidents*, a "deliberate collision caused

in furtherance of an insurance fraud scheme is not a covered accident," but instead falls outside

the scope of the policy's insuring agreement.  As such, "[State Farm} was not required by Insurance

Law § 3420 (d) to issue a disclaimer because its denial of coverage was based on a lack of coverage

for the incident in the first instance." *Id*.  Here, however, Wang's claims clearly fall within the

22

scope of the Policy's Insuring Agreement.  Further, <u>Laguerre</u> stands only for the proposition that an insured who participates in a fraudulent scheme is not entitled to insurance coverage; injured, innocent third parties who did not participate in the fraudulent scheme are still entitled to coverage. <u>Metlife Auto & Home v Agudelo</u>, 8 AD3d 571, 572 (2d Dept 2004).[5] Therefore, <u>Laguerre</u> provides no support to Continental.

Additionally, N.Y.I.L. § 3420(d)(2) applies because Continental's disclaimer is premised on Bulson's breach of a policy condition. As noted above, NYIL § 3420(d)(2) applies with equal force to disclaimers premised on the breach of policy condition as it does to disclaimers based on policy exclusions.  <u>JT Magen</u>., 64 AD3d at 274.  Continental does not dispute this uncontroversial principle.  It instead claims that its disclaimer was not based on Bulson's breach of a Policy condition.  However, this is contrary to the position Continental took in the SDNY Action.  In the very first paragraph of its complaint in the SDNY Action, Continental stated that "[a]ccurate payroll reporting is a material condition to insurance coverage under the Continental Policy" and later stated that "[t]he terms of the Continental Policy confirm that complete and accurate payroll reporting is a material condition of continuing insurance coverage." SDNY Action, ECF Doc. No. 11, ¶¶1, 18. Now, however, realizing that its denial is untimely, Continental claims that it is Plaintiffs who unsuccessfully "tr[y] to frame Continental's denial of coverage as having arisen from the failure of an unspecified condition of the Policy."  Def. Brief at 13. The Court should not be so persuaded.

---

[5] As discussed in <u>Agudelo</u>, New York Vehicle and Traffic Law § 311 forbids retroactive voiding or cancelation of auto policies so as to further the public policy aim of providing protection to injured motorists.  Likewise, New York State Workers Compensation Law § 54(5) forbids retroactive cancellation of a Workers Compensation and Employers Liability policy to uphold the policy aim of protecting New York State worker and innocent third parties like Wang.

To be clear: Plaintiffs reject the notion that Bulson's alleged failure to disclose Wang in its payroll submissions can form a basis for denying coverage. They intend to seek permission to make a Rule 12(c) motion after Continental interposes an answer.[6]  Nonetheless, in the event this Court determines that the Bulson's alleged failure to disclose Wang in its payroll submissions was a breach of a Policy condition, such a defense has unquestionably been waived by Bulson. As such, Plaintiffs' Second Cause of Action states a claim that is not subject to dismissal on a 12(b)(6) motion. Therefore, Continental's motion to dismiss the Second Cause of Action should be denied.

## CONCLUSION

**WHEREFORE**, Plaintiffs request that this Court issue an Order:

    a.   Denying Defendant's Motion to Strike paragraphs 61-107 from the First Amended Complaint, pursuant to Fed. R. Civ. P. 12(f);

    b.   Denying Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action, pursuant to Fed. R. Civ. P. 12(b)(6);

    c.   Directing Defendant's to interpose an answer to Plaintiff's First Amended Complaint within 21 days of the date of the Court's Order denying the instant motion; and

    d.   Along with such other and further relief that this Honorable Court deems just,

---

[6] Indeed, it is unclear on what possible law, regulation, or Policy provision Continental's proposed disclaimer is based on.  New York Insurance Law § 3105, which permits rescission of policies for fraud in the procurement, does not apply to the Policy.  Further, absent a breach of a policy condition or the applicability of an exclusion, we are unfamiliar with any law that permits an insurer to deny a claim for fraud in the inducement yet will permit the insurer to retain the premiums it has collected from the insured.  Continental's coverage position is bereft of legal support and, as noted, Plaintiffs intend to seek permission to make a motion for judgment on the pleadings once Continental interposes an answer.

proper and equitable.

Dated:  New York, New York
        May 15, 2025

By:  _____ */s/ Sim R. Shapiro* _____
        Sim R. Shapiro, Esq.
        Bruce M. Strikowsky, Esq.
        Erik Kallhovd, Esq.

STRIKOWSKY DRACHMAN & SHAPIRO PLLC
*Attorneys for Plaintiffs.*
111 Broadway, Suite 1103
New York, New York 10006
(212) 970-7111
bms@strikowsky.com
etk@strikowsky.com

25