UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

2939, LLC, et al.,

        *Plaintiffs*,

v.

CONTINENTAL INDEMNITY COMPANY,

        *Defendant*.

---

Case No. 21-CV-729 (RPK) (RML)

Oral Argument Requested

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS AND TO STRIKE BY DEFENDANT CONTINENTAL INDEMNITY COMPANY

Shand S. Stephens
Anthony P. Coles
Steven M. Rosato
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501

*Attorneys for Defendant*
 *Continental Indemnity Company*

Dated:  May 30, 2025

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ................................................................................................................................ 3

I.   THE COURT SHOULD STRIKE THE FAC'S ALLEGATIONS CHALLENGING THE DEFAULT JUDGMENT. .............................................................. 3

II.  PLAINTIFFS' SECOND CAUSE OF ACTION SHOULD BE DISMISSED. .................. 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Cont'l Indem. Co. v. Bulson Mgmt., LLC*,
  2022 WL 1747780 (S.D.N.Y. May 31, 2022) ...........................................................................10

*Gotlin v. Lederman*,
  367 F. Supp. 2d 349 (E.D.N.Y. 2005) .......................................................................................8

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*,
  198 F.3d 85 (2d Cir. 1999)........................................................................................................5

*Lone Star Indus., Inc. v Liberty Mut. Ins. Co.*,
  689 F. Supp. 329 (S.D.N.Y. 1988) ..........................................................................................10

*Lynch v. Southampton Animal Shelter Found., Inc.*,
  278 F.R.D. 55 (E.D.N.Y. 2011).................................................................................................9

*McWilliams v. Monroe*,
  2025 WL 220097 (S.D.N.Y. Jan. 16, 2025) ..............................................................................8

*Morris v. Merchants Mut. Ins. Co.*,
  229 A.D.2d 992 (4th Dep't 1996)............................................................................................10

*In re Mylan N.V. Sec. Litig.*,
  379 F. Supp 3d 198 (S.D.N.Y. 2019)........................................................................................7

*Nachmany v. FXCM, Inc.*,
  2020 WL 178413 (S.D.N.Y. Jan. 9, 2020) ............................................................................3, 6

*Pentagen Techs. Int'l Ltd. v. CACI Int'l, Inc.*,
  282 F. App'x 32 (2d Cir. 2008) ................................................................................................4

*In re Platinum & Palladium Commodities Litig.*,
  828 F. Supp. 2d 588 (S.D.N.Y. 2011)...............................................................................2, 6, 8

*Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*,
  5 A.D.3d 198 (1st Dep't 2004) .................................................................................................9

*United States v. Gilbert*,
  668 F.2d 94 (2d Cir. 1981).......................................................................................................7

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*,
  2014 WL 3569338 (E.D.N.Y. July 18, 2014)...........................................................................7

## Statutes and Rules

New York Insurance Law § 3420(d) ................................................................................3, 9, 10

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1

Fed. R. Civ. P. 12(f).......................................................................................................... *passim*

Fed. R. Civ. P. 60..............................................................................................................1, 4, 5

Fed. R. Civ. P. 60(b) .............................................................................................................1, 4

Fed. R. Civ. P. 60(c)(1)...............................................................................................................4

Fed. R. Civ. P. 60(d)(3)...............................................................................................................4

Fed. R. Evid. 404(b)...................................................................................................................7

Defendant Continental Indemnity Company ("Continental") respectfully submits this reply memorandum of law in further support of its motion to dismiss the second cause of action of plaintiffs' first amended complaint ("FAC") for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and to strike paragraphs 61-107 of the FAC pursuant to Fed. R. Civ. P. 12(f).[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition to this motion is a misguided effort to explain away the true function of the FAC, which is to collaterally challenge the Default Judgment entered by Judge Furman in the S.D.N.Y. Action. The opposition's disclaimer that plaintiffs "do not seek to vacate" the Default Judgment cannot be reconciled with the FAC's allegations that the Default Judgment was "erroneously found," FAC ¶ 64; that Judge Furman improperly "relied on *dicta* from cases cited by Continental," *id.* ¶ 65; that Judge Furman "overlooked . . . binding New York State Court of Appeals precedent," *id.* ¶ 67; and that Judge Furman "erred" when he "granted judgment on default." *Id.* ¶ 70. Plaintiffs cannot escape the clear purpose of these allegations, which is to challenge the validity of the Default Judgment entered nearly five years ago and reaffirmed by Judge Furman when he denied Bulson's motion to vacate that judgement under Fed. R. Civ. P. 60 three years ago—an order from which no appeal was taken. ECF No. 25.

Plaintiffs all but admit in their opposition that they have no standing or ability to challenge the validity of the Default Judgment in this action. Under Rule 60(b), any such motion must have been filed: (i) within a year of entry of the Default Judgment; (ii) by "a party or its legal representative"; (iii) before the court in which the judgment was entered. Plaintiffs do not even attempt to argue that they satisfy any of these criteria, because they do not. This Court should not countenance plaintiffs' duplicitous effort to retain the inflammatory, prejudicial, and improper

---

[1] Capitalized terms have the same meaning as in Continental's opening memorandum.

allegations in the FAC accusing Continental of committing fraud in obtaining the Default Judgment, and otherwise attacking the validity of that judgment, by falsely claiming that the FAC does no such thing. If, as they now claim, plaintiffs are not challenging the Default Judgment, then the many allegations in the FAC that do so necessarily are irrelevant and should be stricken.

Though plaintiffs' allegations concerning the NYDFS Consent Order are part and parcel of their false and prejudicial claim that Continental committed a "fraud on the court" in obtaining the Default Judgment, FAC ¶ 99—and should be stricken on that basis alone—plaintiffs unsuccessfully attempt to ascribe independent relevance to those allegations. The NYDFS Consent Order simply has no relevance to any issue in this case, which concerns whether Bulson's fraudulent conduct against Continental vitiates coverage under the Policy for the Wang Litigation. Continental's dealings with NYDFS have no bearing whatsoever on that question. Further, the NYDFS Consent Order itself establishes its complete irrelevance, as it provides that the NYDFS's allegations "have not been the subject of an adjudicatory hearing or judicial process in which Respondents have had an opportunity to present evidence and examine witnesses." ECF No. 37-7, NYDFS Consent Order ¶ 19. "[C]ourts in this Circuit have found repeatedly" that references to consent orders "'that did not result in an adjudication on the merits or legal or permissible findings of fact are, *as a matter of law, immaterial under Rule 12(f)*.'" *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011) (emphasis added). Yet, in clear conflict with the law of this Circuit, the opposition continues to ask the Court to leave the FAC's allegations about the NYDFS Consent Order undisturbed. Opp. at 13-16.[2]

---

[2] Notwithstanding the lack of relevance, the NYDFS Consent Order dealt with a collateral agreement and not the actual workers' compensation policy which was approved and with respect to which the fraud by Bulson, as the insured in this case, was perpetrated.

2

None of the FAC's allegations concerning the Default Judgment or the NYDFS Consent Order "pertain to" or "are necessary to resolve" any "disputed issue[]" before this Court. *Nachmany v. FXCM, Inc.*, 2020 WL 178413, at *8 (S.D.N.Y. Jan. 9, 2020). Paragraphs 61-107 of the FAC serve no legitimate purpose and instead are designed solely to smear and prejudice Continental and improperly challenge the Default Judgment. Those allegations therefore should be stricken in their entirety. *Id.*; *see* Fed. R. Civ P. 12(f).

Finally, the FAC improperly seeks to add a claim for a declaratory judgment that "Continental has waived the right to contest coverage and was thus obligated to defend and indemnify Bulson . . . ." FAC ¶ 125. In an effort to avoid dismissal, the opposition tries to reframe Bulson's fraudulent conduct as a purported failure of an express condition precedent in the Policy. But under settled New York law, no coverage exists for the insurer to disclaim when the insured defrauds the insurer. The disclaimer-of-coverage provision in New York Insurance Law § 3420(d)(2) therefore is wholly irrelevant here and simply another red herring.

Plaintiffs' opposition provides no legal basis to retain any of the allegations in paragraphs 61-107 of the FAC or to permit plaintiffs' second cause of action to proceed. For the reasons explained below and in Continental's opening brief, paragraphs 61-107 of the FAC should be stricken in their entirety, and the second cause of action should be dismissed with prejudice.

## ARGUMENT

### I. THE COURT SHOULD STRIKE THE FAC'S ALLEGATIONS CHALLENGING THE DEFAULT JUDGMENT.

Plaintiffs' opposition to this motion is an end-run attempt to explain away the main purpose of the FAC: to mount an untimely challenge the Default Judgment entered by Judge Furman in the S.D.N.Y. Action. Despite the opposition's disclaimer that plaintiffs "do not seek" to vacate the Default Judgment, that is exactly what the FAC does. Opp. at 18. Unsurprisingly, the opposition

3

fails to address the FAC's explicit allegations that the Default Judgment was "erroneously found," FAC ¶ 64, that Judge Furman improperly "relied on *dicta* from cases cited by Continental," *id.* ¶ 65, "overlooked . . . binding New York State Court of Appeals precedent," *id.* ¶ 67, and "erred" when he "granted judgment on default." *Id.* ¶ 70. This language could not be clearer.

In their opposition, plaintiffs do not contest that the only avenue to challenge the validity of the Default Judgment is through a motion under Federal Rule of Civil Procedure 60. Under that rule, a court may "relieve a party or its legal representative from a final judgment, order, or proceeding" on the basis of, among other things, "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed R. Civ. P. 60(b). Such a motion can only be "filed in the ***same court that rendered the judgment*** the movant seeks" to vacate. *Pentagen Techs. Int'l Ltd. v. CACI Int'l, Inc.*, 282 F. App'x 32, 34 (2d Cir. 2008) (emphasis added). Therefore, this Court is not even the proper venue for the obvious challenge to the Default Judgment described in paragraphs 61-107 of the FAC.

Even if this Court were a proper forum for a challenge to the Default Judgment, plaintiffs do not dispute that they lack standing to challenge it under Rule 60(b) because plaintiffs do not qualify as Bulson's "legal representative." *See* Continental Mem. at 11. Nor do plaintiffs dispute that any such challenge would be over three years too late under Rule 60(b) because the Default Judgment was entered over four years ago. *See* Fed. R. Civ. P. 60(c)(1); *see also* Continental Mem. at 11-12. And while the FAC alleges (falsely) that Continental "concealed" information from the court in obtaining the Default Judgment and committed a "fraud on the court," FAC ¶¶ 94, 96, 99, plaintiffs do not even attempt to argue in their opposition that they have standing to pursue, or that this Court power has the power to grant, relief from the Default Judgment on that basis under Rule 60(d)(3). That ship has sailed.

4

And while plaintiffs' reckless allegations of "concealment" and "fraud" have no place in this proceeding as a matter of law, they are nonetheless entirely unsupported. Plaintiffs claim that it is a "hyper-technical argument" for Continental to suggest that it did not conceal anything from Judge Furman or Bulson in obtaining the Default Judgment and thereafter defeating Bulson's motion to vacate, Opp. at 16, but Continental's observation of this obvious truth is the furthest thing from "hyper-technical."

The crux of plaintiffs' allegations is that Continental somehow concealed—from both Judge Furman and Bulson—the existence of a workers' compensation insurance program ***in which Bulson participated*** and pursuant to which the Policy was issued. Continental did no such thing. Bulson knew at all times the nature of the insurance program in which it participated and could have tried to raise a defense based on its participation in that program (although it is unclear what that defense would be), and it elected not to do so in seeking to vacate the Default Judgment. *See L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999). Plaintiffs conflate Bulson's participation in the program with its obligations under the guaranteed cost workers' compensation policy. The collateral agreement to the program does not impact Bulson's obligation to report and pay premiums for all of its employees, which Bulson did not do. There was no concealment of any relevant information, either from Judge Furman or Bulson, and there is no basis to allow plaintiffs to litigate that issue in Bulson's stead in this Court.

Faced with these insurmountable hurdles, plaintiffs now concede that they "do not seek" any "relief" under Rule 60. Opp. at 18. This concession is dispositive. Without a procedurally proper challenge to the Default Judgment, plaintiffs' allegations directly attacking Judge Furman's reasoning in entering the Default Judgment, FAC ¶¶ 61–70, and falsely claiming that Continental committed a "fraud on the court" and "improperly obtained" that judgment, FAC ¶¶ 71-107,

5

should be stricken because they "do not pertain to, and are [not] necessary to resolve," any "disputed issue[]," before *this Court*. *Nachmany*, 2020 WL 178413, at *8.

Plaintiffs' attempt to identify an independent basis to inject irrelevant allegations about the NYDFS Consent Order into this proceeding also fails. As already discussed, those allegations are part of the same improper effort to invalidate the Default Judgment and should be stricken on that basis. *See infra* at pp. 3-5. Plaintiffs' conclusory assertion that these allegations are nevertheless "highly relevant," Opp. at 13-18, is defeated not just by well-established law rejecting efforts like this to rely on unproven, one-sided allegations in a consent order, but by common sense.

As to the law, courts in this Circuit "repeatedly" strike allegations concerning consent orders that, like the NYDFS Consent Order, "did not result in an adjudication on the merits or legal or permissible findings of fact," because, "as a matter of law," such allegations are "immaterial under Rule 12(f)." *Platinum & Palladium*, 828 F. Supp. 2d at 593; *see* Continental Mem. at 9-10 (collecting cases). The NYDFS Consent Order explicitly states that NYDFS's unilateral findings were "not [] the subject of an adjudicatory hearing or judicial process in which Respondents have had an opportunity to present evidence and examine witnesses." ECF No. 37-7, NYDFS Consent Order ¶ 19. Far from having "no legal support" for its argument that these prejudicial allegations should be stricken, *see* Opp. at 13, Continental's position is the default position of the courts in this Circuit. Continental underscored the legal import of the clear language of paragraph 19 of the NYDFS Consent Order in its moving brief, *see* Continental Mem. at 9, and plaintiffs offered no response in opposition, thereby conceding the point. *See* Opp. at 13-16.

Instead, grasping at any attempt to prevent the allegations concerning the NYDFS Consent Order from being stricken, plaintiffs make the unsupported argument that "[s]triking unadjudicated

6

allegations from other actions goes against [the] weight of authority in this Circuit[.]" Opp. at 13. Plaintiff cites two cases for that sweeping proposition, but neither applies here.

First, *In re Mylan N.V. Sec. Litig.*, 379 F. Supp 3d 198, 214 (S.D.N.Y. 2019), only stands for the proposition that there is no "absolute rule" against "reliance on ***well-pleaded factual allegations in complaints*** in other actions." *Id.* at 214 (internal quotations omitted, emphasis added). That case did not concern untested allegations in a consent order, nor did it find, as plaintiffs ask the Court to infer, that litigants may refer to administrative proceedings that did not result in an adjudication on the merits, like the NYDFS Consent Order here. *See id.*; *see also* Opp. at 13-16. That is because such a finding would contravene the clear law of this Circuit.

Second, plaintiffs rely on *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981), but that case only concerned the admissibility of a consent order under Fed. R. Evid. 404(b), not a motion to strike under Fed. R. Civ. P. 12(f). As subsequent courts in this Circuit have observed, *Gilbert* only "allowed a consent decree between the defendant and the SEC to be introduced at a criminal trial to show the defendant's awareness of SEC requirements—not to prove the underlying facts of liability." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*, 2014 WL 3569338, at *4 (E.D.N.Y. July 18, 2014) (granting motion to strike references to consent order).

Implicitly conceding the strength of the law in Continental's favor on this point, plaintiffs spend several pages attempting to distinguish the several cases cited by Continental that all prohibit references to unadjudicated consent orders. *See* Opp. at 14-16. But each of these cases is applicable here, and all operate uniformly to bar plaintiffs' references to the NYDFS Consent Order as a mechanism to find Continental required to indemnify plaintiffs in the Wang Litigation. Plaintiffs cannot side-step clear case law in this Circuit holding that consent orders "that did not result in an adjudication on the merits or legal or permissible findings of fact," like the NYDFS

7

Consent Order here, "are, as a matter of law, immaterial under Rule 12(f)." *Platinum & Palladium*, 828 F. Supp. 2d at 593; *see also, e.g.*, *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005) ("[C]ourts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion.").

Finally, plaintiffs' allegations about the NYDFS Consent Order also are irrelevant as a matter of common sense. The primary issue in this case is whether Bulson's fraudulent conduct against Continental vitiates coverage under the Policy for the Wang Litigation. Nothing in the NYDFS Consent Order has any bearing whatsoever on the answer to that question. Plaintiffs concede as much in observing that the NYDFS Consent Order generally concerned the "sale and marketing" of certain insurance products in New York State. Opp. at 8. The focus here is on Bulson's misconduct under the Policy, not Continental's settlement of a dispute with a New York state regulator. Bulson's fraudulent conduct precludes coverage under the Policy, thus Continental is not required to indemnify Bulson in connection with the Wang Litigation—period. Nothing in the NYDFS Consent Order could possibly change that result. The references in the FAC to the NYDFS Consent Order should be stricken on this separate and independent basis.

"The purpose of Rule 12(f) is to create a clear mechanism for the court to save time and expense by eliminating certain items from pleadings when the items clearly lack merit, and also for the court to dispose of irrelevant allegations." *McWilliams v. Monroe*, 2025 WL 220097, at *3 (S.D.N.Y. Jan. 16, 2025); *see* Fed. R. Civ. P. 12(f). Striking paragraphs 61-107 of the FAC, which do nothing but impermissibly challenge the Default Judgment, serves this purpose. Despite the opposition's baseless claims to the contrary, *see* Opp. at 12-13, "no evidence in support of" paragraphs 61-107 would be admissible in this action; those paragraphs "have no bearing on" the main issue in this case, which is whether Bulson's fraudulent conduct vitiates coverage under the

8

Policy; and permitting those allegations to stand—especially those falsely accusing Continental of committing some kind of "fraud" on the court—"would result in prejudice" to Continental. *Lynch v. Southampton Animal Shelter Found., Inc.,* 278 F.R.D. 55, 63 (E.D.N.Y. 2011). Those allegations therefore should be stricken in their entirety.

## II.   PLAINTIFFS' SECOND CAUSE OF ACTION SHOULD BE DISMISSED.

The opposition "does not dispute th[e] uncontroversial principle," Opp. at 23, that insurers are "not required to disclaim as to coverage that [does] not exist." *Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*, 5 A.D.3d 198, 200-01 (1st Dep't 2004). But to avoid that established rule, the opposition tries to reframe Bulson's fraudulent conduct as the failure of an express condition precedent in the Policy. *See* Opp. at 23. Tellingly, however, both the FAC and the opposition fail to identify this "condition" of the Policy. *See* FAC ¶¶ 43-47, 51, 54, 60; *see also* Opp. at 18-24. In an unsuccessful and improper effort to cure this defect through their opposition, plaintiffs rely on a single paragraph in Continental's complaint in the S.D.N.Y. Action to claim that Continental "all but acknowledges that the Wang claim falls within the scope of the Policy's Insuring Agreement." Opp. at 21. But the very paragraph on which plaintiffs rely explicitly states, in part, that "this is an action for . . . ***fraud*** . . . arising out of Bulson's failure to disclose to Continental that Wang was a Bulson employee[.]" *See id.* (emphasis added).

The central focus of the S.D.N.Y. Action was Bulson's intentional and material misrepresentations and omissions to Continental, not the failure of any "condition" precedent to coverage under the Policy all along—a fact that the FAC acknowledges. FAC ¶ 38. Misrepresentations made by an insured to an insurer render the underlying policy void. It is black-letter law that an insurer is "not required to disclaim coverage" under N.Y.I.L. § 3420(d) that "[does] not exist." *Tribeca Broadway Assocs., LLC*, 5 A.D.3d at 200-01. And it is equally well settled that an insurer's fraud against the insurer vitiates coverage under the insurance policy. *See,*

9

*e.g.*, *Morris v. Merchants Mut. Ins. Co.*, 229 A.D.2d 992, 992 (4th Dep't 1996) (no disclaimer required where insured makes "material misrepresentations" to insurer); *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, 2022 WL 1747780, at *5-6 (S.D.N.Y. May 31, 2022) (finding no "meritorious defense" to Continental's claims and concluding that "Bulson's misrepresentations about Wang's employment were material as a matter of law"). Continental therefore was not required to provide a disclaimer under section 3420(d)(2). Consequently, Continental could not have "waiv[ed]" any "right to contest coverage," FAC ¶ 125, by purportedly failing to provide a disclaimer of coverage, because no coverage "existed in the first place." *Lone Star Indus., Inc. v Liberty Mut. Ins. Co.*, 689 F. Supp. 329, 333 (S.D.N.Y. 1988). The FAC's second cause of action should be dismissed.

## CONCLUSION

For all these reasons and those stated in Continental's opening memorandum, the allegations in paragraphs 61-107 of the FAC should be stricken, and the FAC's second cause of action should be dismissed.

Dated: New York, New York
      May 30, 2025

Respectfully submitted,

DLA PIPER LLP (US)

By: /s/ *Steven M. Rosato*
    Shand S. Stephens
    Anthony P. Coles
    Steven M. Rosato

1251 Avenue of the Americas
New York, NY 10020-1104
Tel.: 212.335.4500
Fax: 212.335.4501
shand.stephens@us.dlapiper.com
anthony.coles@us.dlapiper.com
steven.rosato@us.dlapiper.com

*Attorneys for Defendant*
  *Continental Indemnity Company*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that, in accordance with the scheduling order entered on March 24, 2025, as further amended on May 8, 2025, I caused a copy of the foregoing document to be served upon counsel for plaintiffs on May 30, 2025, in the above-captioned lawsuit by electronic mail.

Dated: New York, New York                    */s/ Steven M. Rosato*
       May 30, 2025                                             Steven M. Rosato